UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
***************************************************
MARSHA NELL                                *
Plaintiff                                  *
                                           *    C. A. No. 06-CA-11788RWZ
VS.                                        *
                                           *
RITZ CARLTON HOTEL COMPANY, LLC,           *
MILLENIUM PARTNERS and                     *
JRS INTERNATIONAL, INC.                    *
Defendants                                 *
***************************************************
```

**PLAINTIFF MARSHA NELL'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANT RITZ CARLTON HOTEL COMPANY'S MOTION TO COMPEL A RULE 35 EXAMINATION OF PLAINTIFF MARSHA NELL WITHOUT OBSERVERS PRESENT**

**I. INTRODUCTION**

Defendant has retained three experts (two physicians: Dr. Martin Kelly, a psychiatrist and Dr. Bruce Price, a neurologist; as well as a non physician: Dr. Nancy Hebben, a neuropsychologist, to perform examinations under Fed. R. Civ. P 35.

While Dr. Price does not object to having an observer present at his neurological exam which will likely involve an interview of the Plaintiff (Defendant Ritz Carlton Hotel Company's Memorandum at p. 2), Dr. Hebben and Dr. Kelly each refuse to allow an observer to attend their respective examinations of the Plaintiff alleging the observer's presence will "compromise the results of their evaluations." (Ibid.)

Plaintiff opposes Defendant's Motion to Compel on the basis that two of the three proposed defense examinations of the Plaintiff would be without an observer present. Plaintiff opposes said Motion and states there is good cause for the Court to order that an

observer be allowed at Dr. Kelly's and Dr. Hebben's defense examinations of the Plaintiff.

## II.  BACKGROUND

On August 9, 2004, while a guest in a room at the Ritz Carlton Hotel, Boston, Massachusetts, the Plaintiff Marsha Nell was struck in the head by a falling window and sustained a concussion. (Inn House Medical Record, Exhibit A). As a result of her brain injury, the Plaintiff has sustained cognitive deterioration (Dr. Arthur Sherman Medical Record, September 25, 2005, Exhibit B). She has flashbacks, nightmares, panic reactions, all exacerbated by revisiting the event. (Dr. Sherman letter, May 26, 2007, Exhibit C)  For these reasons stated in Dr. Sherman's letter, the Plaintiff, through her counsel, had objected to the Defendant taking her deposition in Boston  On June 28, 2007, the Court ordered that the Plaintiff's deposition be taken in Kingston, NY and not Boston. (Exhibit D)

Defendant now moves the Court to allow defense medical examinations without an observer  present. Defendant cites Cabana v. Forcier, 200 F.R.D. 9 (2001), a decision disallowing the plaintiff's attorney from attending a defense examination of the plaintiff. (See Defendant's  Memorandum at p. 4)  Defendant relies on Affidavits of its two objecting experts, Drs. Hebben and Kelly claiming that an observer will compromise the tests' integrity and validity.

Dr. Hebben relies on sociological research and professional organization position papers.  Dr. Kelly offers no authorities to support his statements that his interview of the Plaintiff will be affected. (Defendant's Exhibit E, paras. 5-7.) Defendant's third retained expert, Dr. Bruce Price, who is a Neurologist board certified by the Board of Psychiatry

and Neurology (Dr. Price Physician Profile, Exhibit E), does not object to having an observer present during his examination of the Plaintiff. (Defendant's Memorandum at pg. 2)

Plaintiff's Opposition respectfully requests that an observer be present at Dr. Hebben's and Dr. Kelly's examinations of the Plaintiff because the instant case present circumstances where third party observers are allowed. Also, if the presence of an observer is with minimal intrusion, it will ensure the validity of the examinations.

### III.  THIRD PARTY OBSERVERS MAY BE ALLOWED AT MEDICAL EXAMINATIONS

Defendant alleges that the presence of an observer at the neuropsychological examination would adversely affect the test results. (Defendant's Memorandum at Exhibit D, Affidavit of Dr. Nancy Hebben) The Affidavit refers to (a) position statements of the American Academy of Clinical Neuropsychologists (AACN), the National Academy of Neuropsychology (NAN); and (b) sociological research. (Defendant's Memorandum, Exhibit D at para 9) However, the professional organization position statements as well as the research has been questioned by other organizations and peer neuropsychologists. For example, the current position statements by the American Psychology Association (APA) and the AACN allow for the presence of an observer under certain circumstances. The sociological research (a phenomenon called "social facilitation") relied upon by the Defendant has been questioned by peer neuropsychologists, see Dr. Muriel Lezak, below.

####     A.      **Third Party Observers are Allowed in Certain Circumstances**

Third party observers are allowed during neuropsychological testing under certain circumstances and many neuropsychologists do not object their presence. Most recently,

in 2007, the American Psychological Association's Committee on Psychological Tests and Assessment (APA) stated, "However, in some cases, the presence of a third party may help develop and sustain rapport in order to facilitate validity" by including a care giver to reduce anxiety (Exhibit F at pgs.1 and 2; also see Lezak, below.) While acknowledging that validity and test security may be compromised when a third person is present, the APA Statement continues, "However, other research also indicates that, in some situations, failure to include a third party may undermine the validity of assessment results." (Ibid at p. 2)  This occurs, according to the APA Statement, when the examinee lacks the emotional security needed to engage in cognitive processes. (Ibid.)

Dr. Sherman's records and letter indicate that the Plaintiff lacks the emotional security to access the testing. (Exhibits B and C, herein)  Therefore, an observer should be present to facilitate validity of the tests. Any effect of observer's presence can be minimized by placing the observer behind a one way mirror or seated behind the examinee.  Alternatively, an audio recording may be utilized. (Exhibit F at pg. 3)

The prohibition against observers attending neuropsychological assessments is not absolute.  Another professional organization, the American Academy of Clinical Neuropsychology (AACN) allows for observers in the clinical setting and in criminal forensic consultations but not where a "plaintiff patient" is undergoing an evaluation assessment, (Exhibit G at pg. 433-34).

Peer neuropsychologists favor observers being present.  In the National Academy of Neuropsychology' s (NAN) survey conducted by Dr. Bradley Sewick, et als, over seventy (70%) percent of neuropsychologists of (NAN) who responded to the survey indicated they would allow an observer at the exam; and sixty-three (63%) percent of the

respondents indicated that video taping of exams was acceptable.  (See, "Third Party Observers in Neuropsychological Testing: A 1999 Survey of NAN Members, Sewick, Blasé and Besecker, presented at the 19th Annual Meeting of the National Academy of Neuropsychology, Exhibit H)

Dr. Kelly maintains, without explanation, that the examinee will consciously or unconsciously be responding to the examiner and observer (or recording device), to the detriment of the interview process.  Dr. Kelly does not discuss how the adverse nature of the examination (Dr. Kelly is retained by the Defendant) will affect the examinee's response.

Having an observer at the defense examinations of this Plaintiff makes sense.  As renown Neuropsychologist, Dr. Muriel Lezak explains, "Almost every patient approaches psychological testing with a great deal of apprehension.  Brain injured patients. . . are often frankly frightened. . . [And] undue anxiety certainly will not be conducive to a representative performance." Neuropsychological Assessment, Third Edition, Muriel Lezak (1995) at pp 141-42.  (Exhibit I)  The Plaintiff's anxiety, fears, nightmares as she deals with the trauma are documented by her psychiatrist, Dr. Sherman (Exhibits B and C, herein) and may not be conducive to Plaintiff having a "representative performance" at the examinations.

**B. Good Cause Exists to Allow an Observer at Defendant's Examinations of the Plaintiff**

Observers are some times allowed during examinations especially where good cause exists, as it does in the instant action: "The more [the Plaintiff] engages with the event itself, the more she suffers from flashbacks, nightmares, a variety of avoidance reactions, hypervigilance, sleep difficulties, etc."  She also has panic reactions.  (Exhibit

C).  Plaintiff is vulnerable because of her traumatic brain injury and an observer is warranted.

## IV. **CONCLUSION**

Plaintiff, through her counsel, respectfully opposes Defendant's Motion for a Defense Examinations of the Plaintiff Marsha Nell Without Observers Present and requests that the Court deny the same.  Plaintiff also requests that if the Court orders the Plaintiff to submit to the defense exams that the Court:

1. Order that a third person selected by Plaintiff's counsel be allowed to attend any and all neuropsychological examinations by Dr. Nancy Hebben so ordered;

2. Order that a third person selected by Plaintiff's counsel be allowed to attend any and all defense psychiatric examinations by Dr. Martin Kelly so ordered;

3. Order that Defense experts be prohibited from asking any questions regarding the liability issues in this matter; and

4. Make any other orders the Court deems proper and just.

    The Plaintiff, by her Counsel,

    /s/ Kenneth I. Kolpan
    Kenneth I. Kolpan
    Law Office of Kenneth I. Kolpan, P.C.
    Suite 1425
    175 Federal Street
    Boston, Ma. 02110
    (617) 426-2558
    BBO 276960

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the following attorneys of record via the ECF System on March 27, 2008.

Kristin Tyler Harris, Esquire
Richard E. Brody, Esquire
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza, 12th Floor
Boston, Ma. 02116

Christopher Callanan, Esquire
Campbell, Campbell, Edwards & Conroy
One Constitution Plaza
Boston, Ma. 02129

                    /s/ Kenneth I. Kolpan
                    Kenneth I. Kolpan
                    Law Office of Kenneth I. Kolpan, P.C.
                    Suite 1425
                    175 Federal Street
                    Boston, Ma. 02110
                    (617) 426-2558
                    BBO 276960